Madam Clerk, please call the next case. 216-0310, Mary Beal v. Dr. Matt Hanson. Counsel, you may proceed. Good morning, Your Honor. This is Counsel from the Justice Court. My name is Jason Usman. I'm here on behalf of the plaintiff, Mary Beal. What we're asking for is that the decision of the Commission be reversed against the manifest weight of the evidence and the decision of the arbitrator reinstated. I hate to confront you with this at the outset, but this case does, I think you'd have to admit, turn on the Commission's assessment of the credibility of the claimant. I mean, they had a multitude of reasons why they simply did not believe her. She's saying that she was assigned no buses on a continuing basis. They said that was obviously not true. She wrote up a lot of things but never wrote up any buses for bad seats. The witnesses indicated that, you know, that was not the case. I mean, they had credibility questions. So how do we ignore the credibility findings? Well, I don't think we ignore the credibility findings. I think some of the credibility findings and the reasons for making the findings that they made are not exactly as they stated in the decision. I think the facts are a little different.  So you're saying, to summarize it, there's no support for the credibility determination they made? You wouldn't say that, would you? I would say the overwhelming support is for the other. Let me throw a twist into that. Was it necessary for a petitioner to have obtained an award for her to have proven that the seats were defective? The commission reversed the arbitrator's award here based on what it found to be incredible testimony on the part of the claimant relative to the defective seats, right? Correct. So was it necessary for the claimant in the first place to have established the seats were defective Or could she have just simply established repetitive trauma due to the years of driving a bus, which she testified to, and which would have been independent proof of any defect? That's part of my position. Is it? Because that's the thing I didn't really see in here. Well, in her testimony, she's complaining about pain with bouncing, with riding on these buses. And she notes that these seats are not supportive, that they don't move, they don't. She said either her purse or the cushion behind her. So her testimony is, and she also mentions that some of the seats are also broken. I don't think it's necessary that the seats are actually broken for her to have a compensable claim. But did you make that argument in the circuit court or in your brief in this court? Not necessarily, but the seats had to be. It wasn't prefaced that way, that the commission doesn't have to find the seats are broken. But it's that her testimony is that they're not supportive. So it's not necessarily that they're broken or they're not broken. The issue is whether or not she's in these, the seats are providing her sufficient support while she's doing this job. And what's the evidence there? Most of it is her testimony. Her testimony that she's having to put a cushion behind her or a purse behind her back and that these seats didn't move. They're on the older buses. And the testimony of one of the witnesses that these older buses were being phased out, I think, you know, it gives an implication that there's a reason they're being phased out. These are the older buses. They're getting new ones that are going to be more supportive, more in better repair. Setting that aside for the moment, what do you make of this, the issue about the buses? The commission also specifically found that Kraman's credibility was undermined and damaged by her failure to attribute any symptoms to the bus seats until her visit with Dr. Chanel on January 12, 2009, 11 months after she sought treatment for her symptoms. So they were concerned about her epiphany that almost a year later, it's the aha, it must have been related to the bus seats. What do you make of that? And so that's something more objective to the record. The commission, and that is the first record she describes the seats. Before that, she had described the issue with just driving, her back being aggregated with her driving activities, which you've seen in March of 2008, which is only a month after her injury by Dr. Chanel as well. She describes her job activities, and it is at that point in time that his opinion, he notes that her bus driving activities are out of condition. Dr. Chanel renders a causation opinion. Dr. Weiss says no causation. It's symptom magnification. She's got degenerative disc disease, and she's not doing anything of a repetitive nature that would cause this. So what are we supposed to do with that? I mean, what's wrong with Weiss's opinion? Why could not the commission rely on it? Well, a couple things are wrong with Dr. Weiss's opinion. One, Dr. Weiss offers the opinion that only a repetitive lifting of 70 pounds can ever aggravate a genetic condition. No, but that's not true. That's not exactly what he said. It's in there. He did provide repetitive lifting more than 70 pounds as an example of one such activity. He acknowledged that other work activities can also exacerbate degenerative disc disease. So that's a little bit of a right hander. He didn't claim it the only lifting of more than 70 pounds, if you read it carefully. But as an adjunct to what he said, and I found this interesting, did Dr. Weiss actually get on a bus that she drove and drive it himself? It's not one of her buses. But did he drive a bus? He drove a bus at some point in time. Well, that's interesting. The doctor would do a hands-on? No, he testified that he was at some other. It wasn't on this case, either. It was on some sort of study. But get back to my question. Sure. Why couldn't the commission rely on him? Well, because I think the decision or his opinion, the way he stated it, has not been supported by the commission. It's not been adopted that you can only have an aggravation of these conditions with repetitive lifting. But that's an issue of weight. If he said something they didn't like, that's fine. But that goes to weight. But at what point in time can we turn around and say, no reasonable human being could rely on this man's opinion? Because that's what we have to say to reverse the commission's determination that that's the opinion that they credited. Well, both his opinions based on an underlying opinion that you have to have significant lifting on a repetitive basis to cause aggravation of degenerative conditions. And what's wrong with that? Well, it's not an opinion that's been adopted by the commission or by this Court. Well, I don't understand what you mean it's not been adopted by the commission. They adopted his opinion, didn't they? But nobody said that you have to have lifting of 70 pounds or more on a repetitive basis. Well, he said it. He said it. The commission believed him. I mean, until you get to the situation where a doctor says, my opinion is based upon consultation with the entrails of chickens, I don't think we have the ability to turn around and say, this guy is so far out no reasonable human being could believe him. And then when you get a situation like you're arguing, there's something on the basis of opinion that goes to the weight, we don't judge weight, they do, because we don't re-weigh evidence. Well, it's both that and the fact that the commission is clearly relying on the fact that he drove a bus as giving him some significant understanding of his health. Wasn't there something cool about the doctor saying I was actually on a bus? Do doctors usually make field trips? Oh, I mean, doctors who solely do IMEs, I think, probably do examine buses and facilities. That isn't your argument. What about the bus he drove? Is it exactly the same bus? No, it's not. Now we're in the argument here that there's something wrong with accepting that when the evidence is contrary, that this is the same situation, work environment that the claimant was in for X number of years. Right. He acknowledged in his testimony that he had no understanding of the specific model she drove, the specific make. He didn't go out and drive one of the buses that she had described driving. He had merely driven a bus at some point in time. But that goes to his point. Doesn't it really go to weight to be given to the evidence? Yeah, it goes to weight. He didn't seek to borrow his testimony, did he? Well, the fact the commission then relies on that opinion based on that testimony, which should have no bearing on his opinion as to what his view actually did, indicates that his opinion in that regard should be thrown out, quite frankly. What about his opinion that she's a symptom magnifier? She's guilty of symptom magnification. Well, the only doctor that has ever noted symptom magnification is Dr. Weiss. No other doctor, none of her treating physicians, no other doctor that has ever seen her has ever noted symptom magnification. And she's had treatment. She had a surgery that improved her symptoms. She had an FCE that gave an objective basis for her complaints. So there's other evidence that she's not magnifying her symptoms and that her symptoms actually improved with the surgery, that she had symptoms. So in essence, if I can call out what you're saying, is the record doesn't support the credibility findings of the commission and Weiss's opinion is flawed. It has to sort of be the essence of your argument. Right. Dr. Fischer, who also examined plaintiffs and done so on the plaintiff's behalf, noted he'd talked to bus drivers. It was part of his basis for his opinion. He talked to bus drivers. He'd been on a bus. And there's no indication that Dr. Weiss had any information that wasn't available to other doctors based on his driving a single bus at some point in time for some company. Now, her testimony regarding, and the commission also notes, the grievances that she's very comfortable filing grievances and that the fact that she didn't file a grievance for a couple of months. Anything about the bus seats for a year, they felt undermined her credibility. That's what their opinion was. She did testify that she had complained about the rotation of the buses years prior in 2005 or 2006. She testified that she had made some complaints regarding seats and nothing was changed. And she acknowledged that she stopped filing trip reports and driving bus seats because it didn't change. It didn't help. So she kept trying to do her job. Only weeks after Dr. Chanel kind of informed her or discussed the fact that her work activities could be aggravating her condition, she filed a workers' compensation claim. Her application was filed in March of 2008, which is a month after her injury date. So it's not that she went a year without filing any kind of grievance, as they would call it, with the defendant, but she filed her application with the commission, which is what she can file when she has a work-related injury. So I think the finding that she didn't file a grievance is not a significant weight that her injury was not related. And I think those are your questions. I've addressed everything else that I've written down. Thank you. Thank you, counsel. You'll have time in reply. Counsel may respond. Good morning. Good morning. Carol Hartline on behalf of Rockford Mass Transit District. Our position is that the commission's decision should be affirmed. Their decision is not against the manifest weight of the evidence. If you review their decision, they cite where they review the evidence and have separated out in 55 separate paragraphs before, at the end, that they discuss the fact that they did not find Ms. Beal credible. First and foremost, she must prove that she had an accident, and her main testimony was, one, that she had these broken seats, that she received the same buses all the time, and they all had these broken seats. You've characterized that as her main argument. How do you reach that conclusion? From her testimony, she testifies that she drove 9,500s and 9,900s. Since I read the application for adjustment of claim, what did she claim as the cause of her injury? When she testified, she claimed that she had the same broken down buses that she drove and also indicated that in November or December at some point, what she said were bells but were bellows fell out of a particular bus. I'm sorry. I prefaced my question with the application for adjustment of claim. Did she claim that a broken seat caused her injury? No. The application itself is simply what I would characterize as a notice pleading something happened in the course of her employment. At what point did she zero in on a broken seat as the cause of her repetitive trauma, or did she? Well, my understanding of reviewing the medical records is when she sees Dr. Schnell in 2009, and there's a dictated note, and it indicates that she was seen with Dr. Schnell in the presence of her attorney where the broken seat issue comes up. The first time that we hear that their bells or bellows fell out of the bus causing injury to her back when she went back in November or December, the first time that we hear that is the testimony at the time of the hearing. So no doctor ever addressed that because she did not report that specific fact. It was also significant, counsel indicates that she did not file a grievance over this, and the importance of that is that she did have other complaints that she was vocal about, and it was significant that she has filed applications for adjustment and workers' compensation cases in the past and filled out a specific accident report, whether or not she was in an accident, she hit a deer, or whether or not she just simply fell out of a van. Those were significant. Falling out of a van was significant enough for her to fill out a specific accident report, but when she describes bellows falling out of the truck and having to only be able to go 10 miles an hour back to the station, she does not fill an application or an incident report for that, which I believe the commission found significant. I thought it was also significant when you look at the medical treatment. She claims in her testimony that she didn't go to the doctor right away because she called him and she couldn't get an appointment. But in that period of time, she's treated for other conditions, and when she sees Dr. DeGuzman for the first time in February of 2008, although her testimony says pain all started in November or December after something happened, she couldn't remember what month it happened, she told Dr. DeGuzman that it started in January of 2008, which is inconsistent with her testimony. I thought the commission pointed out it was significant that they found that she did not report the specific accident. I believe, Justice Harris, you asked, well, did she actually have to prove that there was a defect in the seat? She doesn't have to prove that there's a defect in the seat to call, but she does have to prove a causal connection between an accident or a condition of ill-being. And you would concede she could prove an accident that could lead to an award simply through testimony that over the course of the years, she bounced around in her seat a lot and gradually reached the point of manifestation, and this was all work-related without having to prove a defect in the seat. What we're left with is what she did testify to. What she tried to prove is that a specific accident happened with the bells coming out, first time we hear that as a testimony, and then that she had broken seats all the time, and it was the broken seat that caused this. That was her testimony. Well, that's the record that I think Justice Harris was asking. Hypothetically, this accident or this compensability could be achieved on the basis of years of driving a bus. Not in this case, because we do have Dr. Weiss who addresses that specific question. He said specifically for medical causation, his opinion was that simply driving the bus alone would not have caused the condition. Because that's what she has to prove. Once her argument was going to be I simply drove these buses, she still has to prove the connection. Your answer would be even in the case, if that were the theory of the case, the facts of this case would not support recovery. Correct, because Dr. Weiss didn't address that particular issue. The other doctors not necessarily did. They used what she had reported to them. So based on that alone, I would ask that the commission decision be confirmed. Thank you. Thank you, counsel. Counsel, you may reply. Well, you may, but you don't have to. I don't have anything additional. Thank you. Okay, very good. Thank you, counsel, both for your arguments in this matter. This morning it will be taken under advisement. A written disposition shall issue.